United States v. Wheeler. Ms. Hester, good to have you back, Ms. Hester. May it please the court, Anne Hester representing Gerald Wheeler. The district court relied on hearsay assault allegations made by Wheeler's ex- Even though Wheeler's probation officer had initially declined to file a revocation petition after investigating Mobley's statements, the government told the court- But the magistrate judge found that there was probable cause to go forward on the one violation. On the one violation, yes. I'm not sure how it matters that they didn't, the probation officer didn't initially file the revocation petition. So I think my point is just that multiple people involved in these decision-making processes found that her statements were less than reliable, including the government, which told the court there probably is a question of whether or not the victim was being truthful, and the court itself, because after admitting the statements, the district court itself recognized this was a close case with thin evidence. And given that the court recognized that it was a close case, considering the standard of review is abuse of discretion, why shouldn't the district court be accorded deference on its decision in this admittedly close case? Well, I think the first reason is because the court made a legal error on the front end in applying the Doswell balancing test. Perhaps the most compelling reason of that error is the fact that the court's statement that the challenges to reliability went merely to the weight to be given the evidence rather than its admissibility in the first place, when under Doswell, reliability affects the weight to be given the defendant's confrontation right, and it's integral to determining the admissibility of the hearsay on the front end. But the court ignored that Wheeler's confrontation interest carried increased weight here because so many factors undercut the reliability of Mobley's hearsay statements, and those statements were the only evidence that Wheeler had assaulted her. So admitting the hearsay evidence first and weighing its reliability after the fact was an abuse of discretion in applying the Doswell balancing test. With these kind of hearings, the rules of evidence don't apply. That's correct. But while the rules of evidence don't apply, Rule 32.1 specifically applies a presumption that hearsay evidence is inadmissible unless the interests of justice require it, and in Doswell, this court said that the government has to show good cause for admitting hearsay evidence. And actually the court made another legal error when it presumed that Mobley's hearsay statements were admissible and then shifted the burden to Wheeler to establish good cause for not admitting them when Rule 32.1 presumes that the hearsay is inadmissible and requires the government to establish good cause. But the district court didn't require the government to make any showing that Mobley's statements were reliable. It required Wheeler to show good cause to keep the hearsay out as evidenced by the court statement. I don't find any good cause not to consider this hearsay statement from Ms. Mobley. But in addition to wrongly applying the Doswell balancing test, the district court also made a clear error when it The court ignored substantial evidence that contradicted its finding and its finding is against the clear weight of the evidence. It's really impossible to square the district court's reliability finding with its later statements that this was a close case with thin evidence, which could only refer to Mobley's reliability. He also called it a thin case, didn't he? He referred to it as thin evidence and he twice referred to it as a close case. And that goes directly to this abuse of discretion situation. He saw the, heard the testimony. We didn't. He heard the testimony, but if, where the only evidence connecting Wheeler to Mobley's injuries were these statements and the court is saying... I thought she was beat up a little bit. She had a very slight injury to her lip. To her lip? To her lip. That was it. And that was what the allegation was, wasn't it? So we're not disputing at this stage... Did he slap her hard or hit her? We're not disputing at this stage that she had a slight injury to her lip, but if the court views... The question is... The question is... Who did it? How she got it. Right. And the district court ignored substantial evidence that was undercutting her statements about how she got it. First of all, the court ignored evidence that she had lied to law enforcement repeatedly in addition to the fact that she shifted back and forth on her story about this happened. The probation officer testified... She didn't want to cooperate. She didn't want to come to court. Isn't that right? It appeared that. It appeared that, yes. She never said she wouldn't come to court. Not one, but two absent witnesses because the cousin also didn't. The cousin hung up on the probation officer and then changed her phone number to avoid talking to him and the court didn't take that into account. But it also didn't take into account the probation officer's testimony about the number of times that she lied to him when he was speaking to her. And it didn't take into account that the hotel night auditor's testimony demonstrated that she was lying to on the video about the reason for the argument with Wheeler and she lied about her cousin's participation in the argument. So as the night auditor described it, there were not... There were three people involved in this argument. Mobley, her cousin, and Mr. Wheeler. And the reason for this argument was because Wheeler had accused Mobley of trying to defraud the hotel, which gave Mobley a reason to retaliate against him. There was also evidence that Mobley was using the assault allegation to extort money from Wheeler and that she reached out to Wheeler's probation officer to reassert the assault allegation around the time when he cut off contact with her. And again, the court ignored the behavior, not just of Mobley, but Mobley's companions on the video that suggested that she was making up this story about being assaulted. So the court considered none of this evidence undercutting the reliability of Mobley's allegations, which makes its reliability finding clearly erroneous. And honestly, your honors, if the hearsay statements in this case are reliable, it's really hard to imagine what would be unreliable. The court made a third error when it determined that the government's efforts to subpoena Mobley were sufficient under Doswell. The government hasn't presented a single case in which one attempt to serve in a subpoena in person, as occurred here, was sufficient to establish good cause for failing to present a live witness in court. We're asking this court to adopt the Eighth Circuit's rule that when a witness... We review that for abuse of discretion as well. Correct. Which would be either a legal error or a clear error. We believe that the facts... You got a judge here that's been doing this for 30 years or something. Tried a lot of cases, heard a lot of witnesses, probably hundreds of them. That's what you're dealing with. That's true, but I don't think there's any precedent for insulating a judge's decisions from clear error review and a review for legal error based on the amount of experience that he has. He's extremely experienced. He's extremely experienced. We don't dispute that. But we're also asking this court to establish as a matter of law, what is the baseline for making efforts to serve a hearsay declarant in this situation? And the Eighth Circuit has adopted a bright line rule that we're asking this court to emulate, which is that when a witness is located in state at an address known to the government, a single failed attempt to subpoena the witness in person is not a satisfactory explanation for her absence. I think it would be helpful both to district courts and to the government to know what the baseline is going in so that they know exactly what they have to do to try to serve someone. Why should we do that? Because the next time, the argument would be, well, you got to go twice, then you got to go three times. Why don't we just leave it alone and just say, let the judge evaluate whether they made a good effort or not to find the witness? Well, I think the court can do that, obviously, but I think that even without a per se rule, the district court abused its discretion in this case in ruling that the attempts to serve Mobley were sufficient. They had plenty of warning that she was going to be uncooperative. She'd already changed her story a couple times back in July when the probation officer was talking to her. She agreed to meet him somewhere, and then she didn't show up. And it was a single half-hearted attempt to serve between April 6th and September 19th. I mean, he only went there once attempting to serve. He went to her house one time. He texted her several times. And April 6th was when probable cause for the hearing was found, and then September 19th was the hearing. So the probation officer had a long time to try and didn't. A long time. And he admitted that he could have staked out her house, and he didn't stake out her house. And also, the government has access to their professional process servers and the United States Marshals, and those folks know how to find somebody who doesn't want to be found, and they didn't avail themselves of that. Finally, the government can't demonstrate that the district court's errors are harmless. The district court's grant of bond pending appeal necessarily recognize that this court is likely to reverse, and that precludes the government. Well, if there was no error, they don't have to demonstrate anything about harmless error. Of course not. Of course not. But if this court decides that any one of these three errors that we've asserted, the district court committed, then it requires reversal. And again, it's the government's burden to establish that, and the court's grant of bond pending appeal require the court to find this court is likely to reverse, and that really precludes the government from demonstrating that this error is harmless. We're asking the court to vacate the district court's judgment and instruct the district court to reconsider the revocation petition on the existing record without relying on Mobley's hearsay statements, and there's a couple of reasons for making that request, and I direct the court's attention to the Eighth Circuit's case in United States versus Coleman where they granted that remedy, because here the government knew Doswell. They knew these statements were unreliable and said so on the record, and they didn't try very hard to get her there. And what's more, the government, when the district court offered up the option of asking for a continuance, the government declined to ask for that and was ready to go forward on what they had. So I think that this is, under the circumstances of this case, remanding for reconsideration on the existing record without Mobley's hearsay statements is an appropriate remedy. The court doesn't have any more questions? Very good. Thank you very much. Ms. Wood? Good to have you with us. Good to be here. Thank you, Your Honor. May it please the court, Julia Wood on behalf of the United States. The district court acted well within its discretion when it admitted the hearsay testimony of Gerald Wheeler's ex-girlfriend during his supervised release revocation hearing. I'll turn first to the reliability question, but I did want to correct one statement. The probation officer here did not initially seek revocation, but he did seek a modification of the terms of supervised release after he was notified of the assault. So I'll turn to reliability. I don't see how the government can say the reliability determination was appropriate given the fact that the government itself said that this witness who was not available was not truthful or may or may not be truthful. The prosecutor did have to acknowledge at the beginning of the hearing that there was some question whether she was being truthful. She had initially recanted her story of the assault, and then six months later recanted her recantation. She did flip-flop, but we do know that this is a common occurrence in domestic violence- Which increases the fact that this witness against him had flip-flopped and recanted multiple times is all the more reason that his strong interest in confronting her and examining her should have been balanced. That is outweighed, though, by the fact that there were other pieces of evidence. This is not a case like Comito where this is the only evidence. What evidence is there, absent her testimony and the cousin's testimony who were not present, what evidence is there as to how she got the injury to her lip? Well, the night auditor testified, and no one disputes that there was an argument. The night auditor, it does not help your cause. The night auditor testified that it was his impression that the two girls were beating up Mr. Wheeler. So that doesn't help, at least your position, it helps Mr. Wheeler. I think it does because he didn't actually see what happened. He saw an argument begin. He went back to his office. He heard what sounded like furniture moving, and he came back out and said that it was his impression that the women had assaulted the man. But the district judge, after hearing all the evidence, including the police officers who came and saw the busted lip— But so where—all right, so the auditor did not see what happened but thought that the women were beating up the man, not vice versa. So that doesn't say that her injury came from Mr. Wheeler. So now what does? So the fact that there was an argument, it's undisputed there was an argument. Yeah. And the woman came away with a bloody lip. Right. But what evidence on this record before the district court is there as to how she got that bloody lip? What evidence is there that Mr. Wheeler did it, if you take away the testimony that was not there? The district court was— That's what they call circumstantial evidence. The district court was entitled to draw the inference from that evidence, that there was an argument, the woman had a bloody lip, and that Mr. Wheeler was the cause of that bloody lip. The only witnesses who were there that night was the auditor, who said it wasn't Mr. Wheeler—his impression it was not Mr. Wheeler. And the police officers who weren't there and didn't see, all they saw was the injury. They didn't see who did it. So it's basically that your argument is that the judge was entitled to make the inference. Yes, that is our argument. And that's his job. That's his job. After he listened to— And he acknowledged it was thin, called it thin, acknowledged it was close, but he had to make a call. That's right, Your Honor. And it was still thin and close, and we got to make a call. Yes, and I will— And who do we—we don't review it as a no vote, do we? Is it still the government's position that there's a question as to Ms. Mobley's truthfulness? The district court did not err when it found that her testimony was reliable. The district court was able to— But the government thought there was a question about her truthfulness. The government had to acknowledge that she had recanted and recanted again, as domestic violence victims often do. But after reviewing the body cam footage— That wasn't the only reason, I think, that the government questioned her truthfulness. There were a number of other things that she'd flip-flopped on, I thought. I don't think the government ever said that it was basing its statement about her truthfulness on any of those other incidents. And I will mention that the extortion, the only evidence supporting that is hearsay from one of Mr. Wheeler's friends. And the incident with her bringing a false charge, the probation officer said at JA200 that he wasn't even completely sure that that was Ms. Mobley. There was another ex-girlfriend in the mix. So I think that where we're talking about truthfulness, we're really talking about this statement that she made— What about the fact that the district court did appear to flip the burden here? I don't think that—I think the district court—you know, we presume that district courts know the law and apply it. And I don't think that we can place that much emphasis on this one stray statement. He did. He held the government to its burden. He found that her statements were reliable because, you know, the officer saw the bloody lip. So we can't rely on what the district court actually said. The district court did flip the burden. The district court said, I don't see any good cause not to admit this. I don't think that we can place, you know, dispositive value on that when the district court otherwise— We do take the district court at its word, but— Then I think the district court inappropriately flipped the burden. When you consider everything that the district court said, we're looking at whether this is plausible in light of all the evidence. When you look at everything that the district court said and its application of the test, it went through the reliability analysis, it considered the strong interest in confrontation, and it also looked appropriately at the government's efforts to get this witness in. I'll go through, just quickly, I want to make a couple of other points on the reliability. He found that two officers testified credibly that she had a bloody lip, and that determination is due. Well, nobody's disputing that she had a bloody lip. The question is, was there any evidence that Mr. Wheeler was the one that bloodied his  And then that's where I think that, you know, the judge as fact finder is entitled to draw that inference, and we defer to his. If it's a thin case, that would be enough if it was a trial with a jury to let it go to the jury. A thin case will get you a determination, and then a jury can decide it one way or another, and that's what they're for, but we don't have a jury here. It's a thin case or a close case, and the decision is reserved to the district court who's seen the witnesses and is familiar with the case, and that's the reason we say it's reviewed here for abuse of discretion. That's right, and the district court did say this is a close case, but we are dealing with preponderance of the evidence. Is it more likely than not? Which witness testified that Mr. Wheeler was the one who caused the injury? There isn't a witness that testified to that, aside from, you know, if we're talking about without Ms. Mobley's testimony. So if there is error, how can it be harmless? I think it's still harmless because the district court itself said this is a close case. We're talking about a close case without her testimony, but it's a close case without her testimony based on the night auditor's testimony that there was a fight. The night auditor testified that he thought that she was the aggressor, not Mr. Wheeler. I understand, and I take Your Honor's point, but he didn't see it, and that was just his perception, and the district court had a different perception, and that's due deference, and the district court did say this is a close case, but even without the hearsay evidence, I find that an assault under North Carolina law, which doesn't require a whole lot, occurred, and so we can say with fair assurance that he would have made the same determination even if . . . Why were the efforts of the probation officer to get Ms. Mobley there? Why were they sufficient? The probation officer didn't seem to try very hard, and only a few days before the  He did try hard. He had been in contact with her in January, and then again in July, so he had been in contact with her, and then he got a subpoena about a month before the hearing.  He started texting her. He started calling her. At one point, she said that she would meet him, but then when he asked for an address . . . When did he go to her apartment or wherever she lived? I believe a few days before the hearing. And he had it for a month? He'd had it for a month, but . . . A few days before the hearing? But he had been in contact with her during that month, and she had said twice that she would meet him, but then she . . . And twice she didn't? Twice she didn't. So why isn't it reasonable for him to then go and stake out her apartment like he told the court he could do, but he didn't? Well, twice she was in Washington, D.C., and the one time she had said she would text him when she got back. But then when he went to her house the next day, she wasn't there. She said she was in Washington, D.C., but he doesn't know that she was there because the government itself says she's not truthful. Well, then he did go to her house the next day, and the question is not . . . Was that the day before he went to her house, the day before the hearing? It was a couple of days before the hearing. The question is not what all could he have done. Did he do enough? And I think we have to take into account that this is the victim of a crime. It's not just any witness. It's a victim of a domestic violence crime, and I would draw the court's attention as I was doing some research. This is an unpublished opinion, but it was from October. United States v. Gravitt. That's 2024, Westlaw 457-9399. Okay, so did you provide that to opposing counsel? Because you haven't provided it to us, have you? No, I'm sorry. You didn't give it to her? No, I did not. Well, that would be the professional thing to do. I apologize, Your Honor, and I don't have to talk about this case. You can talk about it. Okay, I apologize. Okay, what was it, Gravitt, and what's the site? Gravitt. It's 2024, Westlaw 457-9399, and I will give opposing counsel a copy of this case as soon as . . . Is it our case? It's your case, and in that case, we had a domestic violence situation very much like this one. And what's it stand for in the context of this case? This case says, as the district court found, these points merely underscore that the declarants had resolved not to cooperate with the government, and this court found that after several repeated attempts to get this victim and her sister who had witnessed the domestic violence incident to come And I take your point that domestic violence victims, for lots of good reasons, might not want to cooperate with the government, and maybe that's what happened here. But the problem is, for me at least, the government didn't say any of that at the hearing. The district court didn't say any of that at the hearing. All the district court said, or all the government said was, well, we tried a couple times. We went to her house two days ago, can't find her, and the government and then the district court both said, well, that's good enough. Actually, the district court gave the government the opportunity to continue, but the government chose not to. And Mr. Wheeler did not want to continue, and that's because . . . No, Mr. Wheeler didn't want to continue because without those two witnesses, the government didn't have evidence as to who caused the injury. Well, and before the government . . . The government was willing to go forward without the hearsay testimony. The prosecutor gave a forecast of evidence, said, you know, we have the night auditor's testimony. We have two police officers who will testify that she had an injury. The government felt that that was enough from the beginning. That case you're talking about, is that published? No, it is not. It's unpublished. It's unpublished? Probably shouldn't have brought it up at all. Who was on it? What judges were on it? It was Judge Wynn. Judge what? Judge Wynn. Judge Wynn. Judge Wynn, excuse me. I'm sorry, I don't have that. I can't remember the other three, yes. Have you given us the number? Yes. Yes, I can repeat it again if you need it. But . . . So . . . So Judge Wynn, right? Is his name on it, or is it per curiam? It was per curiam. Per curiam. Well, you don't have the other three judges, other two judges? I'm sorry, I can't. I don't have it on my . . .  But so I do think that the government did make adequate efforts to get this victim in under the circumstances, and that's why I would urge this court not to adopt the bright line rule that my friend suggests, because these are . . . What's the bright line rule that you're talking about? That one . . . Well, first of all, I don't think that there was just one failed attempt to serve a subpoena here. Right, you don't want us to adopt the bright line rule, but what is the bright line rule that you're talking about? Well, my friend suggested that the bright line rule would be that one failed attempt to serve a subpoena is not enough. I don't think that that's what happened here, and I don't think that a bright line rule is necessary. All this is reserved to the discretion of the judge. That's exactly right. The facts on these cases differ so greatly that I don't think that it's appropriate for a bright line rule. I'm sorry, I did find the case. It's Judge Wynn, Judge Traxler, and you were on the panel, Judge King. I was on the panel myself. Yes. I'm very sorry. It's one of my cases. I am . . . I'm glad I don't have to say whether I remember it or not. So, we do think that the government made adequate efforts, and in any event, any error would be harmless because the district court itself said that it would have ruled the same way even without the hearsay statements. If you're honored to have no further questions, we would ask that you affirm. Thank you very much, Ms. Wood. Ms. Hester? You don't agree with much of that. Pardon me? I said you do not agree with much of what Ms. Wood said. No, but I have just two points that I want to make for the court. First of all, we don't dispute that domestic violence victims sometimes don't want to come to court, but we do dispute that there's any reliable evidence that domestic violence occurred in this case. That's the whole problem with that argument is that it puts the cart before the horse, and in fact, that's not something that the district court relied on when it stated that it found . . . Because nobody even mentioned that at the hearing. The government didn't say anything like that, and neither did the district court. No. But my second point is, Judge King, you've talked a lot about the district court's discretion, and the court does have a lot of . . . The court has a lot of discretion. It has a lot of discretion. This whole case turns on the district court's discretion. That's all it is. Correct, but the district court . . . He knows more about this case than any of us could know. The district court has a lot of discretion. He didn't come over on the pickle boat either. The district court does not have discretion to ignore this court's decisions, and that's why . . . He's not just an experienced judge of 25 or 30 years. He's highly respected. He's plowed his furrows many, many times. And we don't dispute that at all. Judge Conrad is a very experienced judge, but we believe that he did make a legal mistake in this case in interpreting Doswell, and a legal mistake is an abuse of discretion because the court's . . . A legal error is abuse of discretion. Correct. It has to be a legal error. Right. An error of law is abuse of discretion by definition. By definition, and the court's methodology . . . I'll agree with that part.  But she's got this good case that she just came up with. If you hadn't heard of . . . Well, I just explained why that case doesn't matter. I'm joking, but . . . But the problem here was . . . I was trying to be funny. It's on my birthday, too. But the problem here is that the court's methodology directly conflicts with Doswell because if the evidence is thin and that evidence is these out-of-court statements . . . If the evidence is thin, we generally, under the law, defer to the fact finder. That's true, except . . . If the evidence is thin in the criminal case, you defer to the jury if it was a jury trial, and the evidence wasn't sufficient. Well, it was thin, but it was sufficient, and the jury agreed with it. But the problem in this case . . . Take them in light most favorable to the fact finder. The problem in this case is that that evaluation of the evidence had to take place under Rule 32.1 at the point where the court decides whether that evidence is admissible or not. And here, the judge was the judge and jury both. He was making the factual determination. But he made a mistake in admitting evidence that he basically acknowledged had reliability problems and then weighing it out. Because where did the district court balance Mr. Wheeler's strong interest in confronting the witnesses? There's no evidence that the court did that. I mean, he acknowledged that there was an interest. He suggested it was diminished because this was a supervised release revocation hearing, and then he didn't consider the importance of the statements to the issue, and he did not consider the questionable reliability of the statements when making the admissibility determination. And that's when that has to happen. It's a whole different kettle of fish if the witness is present in court, Your Honor, and that's the point where the court can take that evidence and find a violation. But with the witness absent . . . Witnesses. Two witnesses were absent. With the witnesses absent, the court had to make this reliability determination . . . It has to make the reliability determination. Before admitting it. The rules of evidence about hearsay don't apply. And even in trials, as you know, they got . . . In these rules about hearsay, we got lists of exceptions. I mean, they're just innumerable. You got, oh, it's hearsay, Your Honor. Yeah, but there's an exception. There's always an exception. Most all the hearsay comes in at the trial. Agree. Generally speaking . . . Any more? But in this case, Judge Conrad did not find that any hearsay exception applied. Well, he didn't, but I wasn't asked to. Well, actually, he was asked to, and he didn't. You know that he's the judge and jury, and he understands what the law is and what's going on. However, he . . . And he's seen hundreds or thousands of witnesses and heard hundreds or thousands of cases. Yet, he did make a mistake in applying the Doswell rule in this case, Your Honor. I see I'm out of time. Thank you very much, Ms. Hester. It's always good to have you here. Thank you. Appreciate you. Let's see. How about we take this case under advisement, and Judge Thacker and I will come down, greet counsel, and I'm going to ask counsel to come up and greet my friend Judge Floyd.
judges: Robert B. King, Stephanie D. Thacker, Henry F. Floyd